Robert W. Dickerson (State Bar No. 89,367)
rwdickerson@jonesday.com
Charles A. Kertell (State Bar No. 181,214)
cakertell@jonesday.com
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

Attorneys for Defendants and Counterclaimants,
STAMFORD TYRES INTERNATIONAL PTE LTD.
and STAMFORD TIRES & WHEELS, INC.

William J. Robinson (State Bar No. 83729)
E-mail:    wrobinson@foley.com
Lori V. Minassian (State Bar No. 223542)
E-mail:    lminassian@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, California 90071-2411
Telephone: 213.972.4500
Facsimile: 213.486.0065

Attorneys for Plaintiffs/Counterdefendants
**Yokohama Rubber Co., Ltd.**
and **Yokohama Tire Corporation**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| YOKOHAMA RUBBER CO., LTD. and YOKOHAMA TIRE CORP.,<br><br>Plaintiffs,<br><br>v.<br><br>STAMFORD TYRES INT'L PTE LTD. and STAMFORD TIRES & WHEELS, INC.,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. SACV 07-0010 CJC (MLGx)<br><br>**JOINT STIPULATION ACCOMPANYING DEFENDANTS STAMFORD TYRES INTERNATIONAL PTE LTD. AND STAMFORD TIRES & WHEELS, INC.'S MOTION TO COMPEL DEPOSITIONS**<br><br>Hon. Marc L. Goldman<br><br>Hearing Date: February 20, 2008<br>Hearing Time: 1:00 p.m.<br>Hearing Location: Courtroom 6A<br><br>Fact Discovery Cut-Off Date: 12-17-07<br>Expert Discovery Cut-Off Date: 3-10-08<br>Pretrial Conference Date: 4-28-08<br>Trial Date: 6-2-08 |

LAI-2926750v2

# TABLE OF CONTENTS

**Page**

STAMFORD'S INTRODUCTORY STATEMENT ................................................1

YOKOHAMA'S INTRODUCTORY STATEMENT .............................................4

TOPIC #1:  THE FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)
  DEPOSITION OF YOKOHAMA RUBBER CO., LTD. ..............................8

  Stamford's Position ..........................................................................8

    Yokohama Rubber Should Be Ordered To Produce A Corporate
    Representative For Deposition In Response To Each And
    Every Category Set Forth In Stamford's Federal Rule Of
    Civil Procedure 30(b)(6) Notice ................................................8

      I.    Stamford Timely Served Yokohama Rubber With
            A Proper Notice ................................................................8

      II.   Yokohama Rubber Responded With Meritless,
            Boilerplate Objections ......................................................8

      III.  Yokohama Rubber Refused To Discuss Its
            Objections With Stamford ................................................9

      IV.   Yokohama Rubber's Failure To Appear For
            Deposition Without First Seeking A Protective
            Order Was Improper And Sanctionable ........................ 10

      V.    Yokohama Rubber's Reliance On McCormick-
            Morgan Is Misplaced ..................................................... 10

      VI.   The Noticed Location Was Both Proper And
            Appropriate .................................................................... 12

      VII.  Monetary And Evidentiary Sanctions Are
            Appropriate .................................................................... 15

  Yokohama's Position .................................................................... 16

      I.    Stamford's Notice of Deposition Was Improper........... 16

      II.   Stamford Has Made the Same "Boilerplate"
            Objection In Response to the Notice for Its Own
            30(b)(6) Deposition....................................................... 16

      III.  Yokohama Affirmatively Stated in its Objections
            that No Witness Would Be Produced............................ 17

      IV.   Stamford Is Attempting to Hide Its Own Bad Faith
            Delay Tactic ................................................................... 18

      V.    Stamford is Not Entitled to an Award of Sanctions
            Absent A Proper Showing .............................................. 18

TOPIC #2:  THE FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)
  DEPOSITION OF YOKOHAMA TIRE CORP. ...................................... 20

  Stamford's Position .................................................................... 20

# TABLE OF CONTENTS
## (continued)

Page

Yokohama Tire Should Be Ordered To Produce A Corporate Representative For Deposition In Response To Each And Every Category Set Forth In Stamford's Federal Rule Of Civil Procedure 30(b)(6) Notice ................................................. 20

I. Stamford Timely Served Yokohama Tire With A Proper Notice .................................................................. 20

II. Yokohama Tire Responded With Meritless, Boilerplate Objections .................................................... 20

III. Yokohama Tire Refused To Discuss Its Objections With Stamford................................................................ 21

IV. Yokohama Tire's Failure To Appear For Deposition Without First Seeking A Protective Order Was Improper And Sanctionable.......................................... 21

V. Yokohama Tire's Reliance On McCormick-Morgan Is Misplaced.................................................................. 21

VI. An Unverified, Professed Lack Of Knowledge Is Not A Valid Objection.................................................. 22

VII. Yokohama Tire's "Game Playing" With Respect To The Date Of The Deposition Further Exemplifies Its Bad Faith Approach To Discovery.......................... 23

VIII. Monetary And Evidentiary Sanctions Are Appropriate ................................................................... 24

Yokohama's Position.......................................................................... 25

I. The Deposition of YTC Was Cancelled By Stamford....................................................................... 25

II. Yokohama Had No Obligation To Stipulate Any Depositions After The Discovery Cut-Off .................... 25

TOPIC #3:  THE DEPOSITION OF MARK CHUNG .......................................... 26

Stamford's Position .......................................................................... 26

Yokohama Should Be Ordered To Produce Mark Chung For Deposition ................................................................................. 26

I. Yokohama Failed To Identify Mark Chung In Its Initial Disclosures ...................................................... 26

II. Yokohama Amended Its Initial Disclosures To Identify Mark Chung With Less Than Ten Full Days Remaining In The Fact Discovery Period........... 26

III. Yokohama Refused To Produce Mr. Chung Despite The Late Disclosure.................................................... 27

Yokohama's Position.......................................................................... 28

I. A Deposition Must First Be Noticed Before It Can Be Compelled ............................................................. 28

# TABLE OF CONTENTS
## (continued)

Page

II.   The Disclosure of Mark Chung Was a Good Faith Effort to Designate an Available Witness ...................... 28

TOPIC #4:  THE DEPOSITION OF JAMES MACMASTER ............................. 30

Stamford's Position ........................................................................ 30

Yokohama Tire Should Be Ordered To Produce James MacMaster For Deposition............................................ 30

I.   Yokohama Tire Identified Five Employees In Its Initial Disclosures ................................................. 30

II.   Yokohama Lied When It Identified Mr. Griffing.......... 30

III.   Yokohama Then Deleted Mr. Griffing, Mr. Koplin, Mr. King, and Ms. Sweeney From Its Initial Disclosures................................................................ 31

IV.   Yokohama "Hid" Mr. MacMaster Via A Witness "Shell Game\............................................................ 31

V.   Yokohama Previously Represented That Mr. MacMaster Would Appear ............................................... 32

VI.   Monetary Sanctions Are Appropriate............................ 32

Yokohama's Position........................................................................ 33

I.   MacMaster Was Never Noticed for Deposition ............ 33

II.   Stamford's Discovery Tactics Are Abusive .................. 34

TOPIC #5:  THE DEPOSITIONS OF THE NAMED INVENTORS OF THE '014 PATENT-IN-SUIT ........................ 35

Stamford's Position ........................................................................ 35

Yokohama Rubber Should Be Ordered To Produce All Five Named Inventors Of The '014 Patent For Deposition ................................................................. 35

I.   Stamford Timely Served Yokohama With Valid Deposition Notices................................................. 35

II.   Yokohama Intentionally Delayed Responding To Stamford's Notices................................................. 35

III.   Stamford Was Not Required To Serve Subpoenas........ 35

IV.   Stamford Was Not Required To Obtain A Commission/Letter Of Request ..................................... 36

V.   Los Angeles Is A Proper Forum For The Depositions ................................................................ 36

VI.   Yokohama's Claims Of Harassment Are Ridiculous..... 37

VII.   Additional Policy Reasons Support An Order Directing Yokohama To Produce The Named Inventors For Deposition ................................................. 37

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3

VIII.   Yokohama Systematically Delayed Its Responses To Stamford Discovery.................................................. 39

4

Yokohama's Position.................................................................. 45

5

I.      Non Managing Agents of a Corporation Must Be Subpoenaed for Deposition.................................... 45

6

II.     Stamford Has Engaged in Strategic Delay of Discovery .................................................................. 46

7

ADDITIONAL YOKOHAMA POSITION............................................ 47

8

The Motion Is Untimely ........................................................... 47

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

*AB Diversified Enterprises, Inc. v. Global Transport Logistics, Inc.*,
2007 WL 1362632 *1 (S.D. Fla. 2007) .................................................................. 47

*Cadent Ltd. v. 3M Unitek Corp.*,
232 F.R.D. 625 (C.D. Cal. 2005) ........................................................ 12, 16, 35, 36

*Calgene Inc. v. Enzo Biochem*,
1993 U.S. Dist. LEXIS 20217 (D. Cal. 1993) ..................................................... 45

*Chevola v. Cellco*,
2007 U.S. Dist LEXIS 86124 (M.D. Fla. 2007) ................................................... 47

Days Inn Worldwide, Inc. v. Sonia Investments,
237 F.R.D. 395 (ND TX 2006) ............................................................................. 48

*Gault v. Nabisco Biscuit Co.*,
184 F.R.D. 620 (D. Nev. 1999) ............................................................................. 48

*Hilao v. Estate of Marcos*,
103 F.3d 762 (9th Cir. 1996) ........................................................................... 10, 21

*Hyde & Drath v. Baker*,
24 F.3d 1162 (9th Cir. 1994) ................................................................................. 13

Material Supply Int'l, Inc. v. Sunmatch Indus. Co., Ltd.,
146 F.R.D. 983 (DC Cir. 1998) ............................................................................. 48

*McCormick-Morgan, Inc. v. Teledyne Industries, Inc.*,
134 F.R.D. 275 (N.D. Cal. 1991) ............................................................... 11, 12, 21

Packman v. Chicago Tribune Co.,
267 F.3d 628 (7th Cir. 2001) ................................................................................. 48

*Pushko v. Klebener*,
2007 U.S. Dist. LEXIS 66223 , 2007 WL 2671263 (M.D. Fla. 2007) ............... 47

*Reed Paper v. Proctor & Gamble*,
144 F.R.D. 2 (D.Me. 1992) ................................................................................... 46

*Sales v. State Farm Fire and Casualty Co.*,
632 F. Supp. 435 (N.D. Ga. 1986) ....................................................................... 47

*San Francisco Bay Area Rapid Transit Dist. v. Spencer*,
2006 U.S. Dist. LEXIS 8167 (N.D. Cal. 2006) ................................................... 28

*Suntrust Bank v. Blue Water Fiber, L.P.*,
210 F.R.D. 196 (E.D. Mich. 2002) ....................................................................... 47

## TABLE OF AUTHORITIES
### (continued)

Page

*Toth v. Trans World Airlines,*
    862 F.2d 1381 (9th Cir. 1988) ............................................................ 19

*Turner v. Prudential Insurance Company of America,*
    119 F.R.D. 381 (M.D.N.C. 1988) .......................................... 12, 13, 36

*Wells v. Sears Roebuck & Co.,*
    203 F.R.D. 240 (S.D. Miss 2001) ..................................................... 48

*Wisconsin Real Estate Investment Trust v. Weinstein,*
    530 F. Supp. 1249 (E.D. Wis. 1982) ................................................ 13

## STATUTES

Fed. R. Civ. P. 28(b) ..................................................................... 7, 36, 45

Fed. R. Civ. P. 30(a)(2)(A)(i) ................................................................. 33

Fed. R. Civ. P. 30(b)(1) .......................................................................... 28

Fed. R. Civ. P. 30(b)(5) .......................................................................... 45

Fed. R. Civ. P. Rules 30 ......................................................................... 45

Fed.R.Civ.P. 26(a)(1) .............................................................................. 26

Fed.R.Civ.P. 26(a)(1)(A) .......................................................................... 2

Fed.R.Civ.P. 26(f) ................................................................................... 38

Fed.R.Civ.P. 28 ...................................................................................... 36

Fed.R.Civ.P. 28(a) .................................................................................. 36

Fed.R.Civ.P. 30 ........................................................................................ 1

Fed.R.Civ.P. 30(a)(2)(A) .......................................................................... 2

Fed.R.Civ.P. 30(b)(6) ...................................................................... passim

Fed.R.Civ.P. 37 ........................................................................................ 1

Fed.R.Civ.P. 37(d) ....................................................................... 2, 10, 21

Fed.R.Civ.P. 45 ................................................................................ 36, 45

## OTHER AUTHORITIES

*California Practice at* §11:1456 ........................................................... 36

1

## TABLE OF AUTHORITIES
### (continued)

2
**Page**

3    *California Practice Guide:*
      *Federal Civil Procedure Before Trial*, §11:1456 (2007) ............................... 12, 13

4    *Wright, Miller & Marcus Federal Practice and Procedure*:
5      Civil 2d § 2112 at 84-85 (1994 rev.) ...................................................... 16

6

## RULES

7    Local Rule 16-14 ......................................................................... 49

8    Local Rule 26 ............................................................................. 33

9    Local Rule 26(c) ......................................................................... 10

10   Local Rule 37 ............................................................................. 4

11   Local Rule 37-1 ...................................................................... 23, 41, 49

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STAMFORD'S INTRODUCTORY STATEMENT

Defendants Stamford Tyres International Pte Ltd. and Stamford Tires & Wheels, Inc. (collectively "Stamford") hereby move, pursuant to Fed.R.Civ.P. 30 and 37, for an order:

1. Compelling plaintiff Yokohama Rubber Company, Ltd. ("Yokohama Rubber") to produce a corporate representative for deposition in response to each and every category set forth in Stamford's Fed.R.Civ.P. 30(b)(6) notice;

2. Compelling plaintiff Yokohama Tire Corporation ("Yokohama Tire") to produce a corporate representative for deposition in response to each and every category set forth in Stamford's Fed.R.Civ.P. 30(b)(6) notice;

3. Compelling Yokohama Tire to produce Mr. Mark Chung, its Director of Strategic Marketing, for deposition;

4. Compelling Yokohama Tire to produce Mr. James MacMaster, its Executive Vice President, Business Division, for deposition;

5. Compelling Yokohama Rubber to produce the named inventors of the '014 patent-in-suit (Masahiro Ishida, Hirohisa Hazama, Hiroshi Tokizaki, Koutarou Iwabuchi, and Izumi Kuramochi) for deposition; and

6. Imposing monetary and evidentiary sanctions against Yokohama Rubber and Yokohama Tire (collectively "Yokohama").

Stamford's motion is based on (at least) the following:

1. Yokohama Rubber's refusal to produce a corporate representative (on December 14, 2007) in response to Stamford's proper Fed.R.Civ.P. 30(b)(6) deposition notice (served on November 15, 2007) *without first seeking a protective order.* Not only did Yokohama Rubber fail to appear, it relied (almost exclusively) on the same type of "boilerplate" objections this Court expressly warned counsel it would not tolerate, and that would be met with personal sanctions. Yokohama Rubber's other

1

objection, to the location of the deposition, cannot justify its unilateral refusal to appear.  *See*, Fed.R.Civ.P. 37(d).  Indeed, the case law cited by Yokohama in its objections actually supports Stamford's position;

2.   Yokohama Tire's refusal to produce a corporate representative (on December 13, 2007) in response to Stamford's proper Fed.R.Civ.P. 30(b)(6) deposition notice (served on November 15, 2007) ***without first seeking a protective order.***  Yokohama Tire not only relied on virtually the same "boilerplate" objections as Yokohama Rubber, it incredibly plead ignorance as to almost every fact set forth in its Complaint.

3.   Yokohama's failure to timely disclose Mr. Chung, as required by Fed.R.Civ.P. 26(a)(1)(A).  Despite being a high-ranking Yokohama Tire employee, Mr. Chung was not identified in Yokohama's Initial Disclosures until late on the afternoon of Friday, December 7, 2007 (less than 10 full days before the close of the fact discovery period).  Yokohama's delay prevented Stamford from properly noticing and taking Mr. Chung's deposition within the discovery period.  Yokohama cannot use its unexplained failure to timely disclose Mr. Chung (who lives in Los Angeles) as the sole basis for avoiding his deposition;

4.   Yokohama's effort to "hide" Mr. MacMaster from deposition by serving knowingly false Initial Disclosures.  On April 2, 2007, Yokohama Tire identified five employees as having relevant information that Yokohama might use to support its claims.  Given the Fed.R.Civ.P. 30(a)(2)(A) limit of 10 depositions per side, Stamford could not possibly depose all five employees.  Stamford therefore chose to notice the deposition of the Yokohama Tire employee (Mr. Tom Griffing) who was identified as having the most relevant knowledge, namely: the design, development, and ornamentation of the S.drive tire (Yokohama's alleged commercial embodiment).  However, after Stamford served Mr. Griffing with a

1   subpoena, Yokohama deleted four of the five Yokohama Tire employees

2   (including Mr. Griffing) from its Initial Disclosures – leaving only Mr.

3   MacMaster.  The reason is simple.  Yokohama had lied.  As Mr. Griffing

4   later testified, he had no knowledge of the S.drive tire and he had never

5   been contacted by Yokohama's attorneys.  Yokohama cannot avoid Mr.

6   MacMaster's deposition by "burying" his disclosure amongst a group of

7   other employees who Yokohama falsely represented had more relevant

8   information.  Yokohama even refused Stamford's offer to produce Mr.

9   MacMaster in exchange for a withdrawal of Mr. Griffing's subpoena;

10  5.  Yokohama's tactical use of Japanese law to avoid discovery.  As this Court

11      is aware, Yokohama repeatedly failed to provide non-evasive answers to

12      Stamford's interrogatories.  Yokohama also repeatedly failed to produce

13      documents in a timely manner.  Indeed, despite being served with requests

14      on June 4, 2007, Yokohama did not produce a single document until mid-

15      September (and only agreed to produce all documents concerning the

16      conception and reduction to practice of the '014 patent in mid-November).

17      Without this information, deposing the named inventors of the '014 patent

18      would have been meaningless.  Yet, Yokohama now objects to depositions

19      of these named inventors because Stamford did not serve notices back in

20      June and July under Japanese law.  Such procedural "gamesmanship"

21      should not be tolerated.  Plaintiffs that avoid interrogatories, that withhold

22      documents, and that intentionally remain silent about their objections until

23      the very close of discovery should not be permitted to avoid depositions of

24      their named inventors – especially when those same named inventors will

25      voluntarily appear at trial in the United States on behalf of their employer.

26  6.  Yokohama's failure to appear for depositions, without first seeking a

27      Protective Order, is sanctionable conduct even without a court order.

28      Yokohama should also be sanctioned for falsely disclosing Mr. Griffing.

## YOKOHAMA'S INTRODUCTORY STATEMENT

Yokohama Rubber Co., Ltd. and Yokohama Tire Corporation (collectively, "Yokohama") hereby respond to Stamford's Motion to Compel. First, Yokohama emphatically but respectfully submits to this Court that Stamford's *entire* Motion should be denied because it was filed over fifty days after the discovery cut-off date of December 17, 2007 and it is therefore *untimely per se*. The parties are facing an upcoming trial date and expert discovery. Stamford's fact discovery should have been completed months ago, as Yokohama's was.[1] Yokohama tried to address this issue in its recent Ex Parte Application which sought to preclude Yokohama from having to spend the time and resources to prepare an opposition to Stamford's lengthy Motion. Yokohama's position regarding the untimeliness, as asserted in its Application, was and continues to be fully supported by the case law. This Court, in its ruling on the Application, not only did not address the timeliness issue, but has now issued an OSC to Yokohama and even apparently issued the sanction of precluding Yokohama from filing the Supplemental Brief permitted under the Local Rules.

As will be addressed more fully in Yokohama's OSC response, while Yokohama sincerely apologizes to the Court for the irritation apparently caused by the Application, Yokohama at the same time respectfully but emphatically submits that the *Ex Parte* order was an abuse of discretion and reversible error. While the Court focused on the fact that there was a discovery meeting done in good faith, that should not have been the issue. Yokohama met under L.R. 37 because it was obligated to do so. That good faith has nothing to do with Stamford waiting until 57 days after the discovery cut-off to file a motion and disrupt pretrial via a virtually re-opening of discovery. Indeed, unless discovery motions are deemed untimely if filed after the discovery cut-off, there would be nothing to prevent one being filed

---

[1] Yokohama made every effort to complete its discovery in conformity with Judge Carney's Scheduling Order, despite Stamford's purposeful withholding of 190 pages of highly relevant and critical documents until just prior to the deposition of Stamford's 30(b)(6) witness, and only after Yokohama filed a Motion to Compel. *See*, Declaration of Diana Chen ("Chen Dec."), Ex. 47 – Order Denying Stamford's Motion for Summary Judgment, fn. 3.

1    during pretrial or even trial itself.  That is why the case law deems such motions untimely.

2    Second, with regard to the merits, Stamford's Motion seeks to compel *nine* depositions

3    after discovery cut-off: the 30(b)(6) deposition of Yokohama Rubber Company, Ltd.

4    ("YRC"), the 30(b)(6) deposition of Yokohama Tire Corporation ("YTC"), the deposition of

5    Mark Chung, the deposition of James MacMaster, and the five inventors of the patent-in-suit.

6    Stamford's failure to take any depositions during the discovery period, much less starting

7    deposition discovery promptly as it should have done, does not warrant an order compelling

8    the depositions at this late juncture.   The issues for these depositions are as follows.

9    30(b)(6) deposition of YRC:  Stamford noticed YRC, a Japanese corporation, for

10   deposition for Los Angeles, California, rather than at its principal place of business – the same

11   objection Stamford made for the deposition of its 30(b)(6) witness.  Stamford now accuses

12   Yokohama of "taking [sic] out of both sides of its mouth" for standing by its objections, but

13   that could not be further from the truth.   When Yokohama noticed the deposition of

14   Stamford's 30(b)(6) for Los Angeles, California, Stamford responded that the deposition had

15   to be taken in Singapore, at the company's principal place of business.  Calling Stamford's

16   bluff, Yokohama agreed to take the deposition in Singapore and requested that Stamford

17   provide a date certain in the future.  After mutually convenient dates were scheduled and after

18   travel arrangements had already been prepared, Stamford unilaterally decided that the

19   deposition would instead take place in Los Angeles, California.   Stamford's waiver of its

20   objection to the location of the deposition does not render Yokohama's same objection

21   meritless. The place noticed for the deposition was improper and there is no basis to compel.

22   30(b)(6) deposition of YTC:  Yokohama Tire Corporation (YTC) did not refuse to

23   appear for its 30(b)(6) deposition as Stamford asserts.   Rather, the 30(b)(6) deposition of

24   Yokohama Tire Corporation was *cancelled by Stamford* at the last minute due to purported

25   scheduling conflicts.  Stamford cannot now complain about Yokohama's unwillingness to

26   stipulate to produce a witness after discovery cut-off when it waited until November 15, 2007

27   to notice the deposition to take place just *three court days prior to the close of fact discovery*

28   on December 13, 2007.  Thus, there is no basis to compel this deposition.

5

<u>Mark Chung</u>: The Chung deposition was also never properly noticed by Stamford. Stamford's excuse that it was "precluded" from noticing Mr. Chung's deposition with the "requisite 10 days notice" is wholly without merit as the Federal Rules require only "reasonable written notice."  In order to accommodate Stamford's ability to take the 30(b)(6) deposition of YTC at the very last moment before discovery cut-off, Yokohama had to make an alternative witness available to testify on behalf of the Corporation.   Accordingly, Yokohama amended its Initial Disclosure to identify Mr. Chung, since he would be testifying on behalf of YTC.  Yokohama made Mr. Chung available for deposition ***prior to*** the discovery cut-off on December 14, 2007, but Stamford declined to take his deposition.  Stamford waived its right to take the deposition of Mr. Chung and Yokohama should not now be compelled to produce Mr. Chung for deposition.

<u>James MacMaster</u>: The MacMaster deposition was similarly never properly noticed by Stamford.  Mr. MacMaster is a managing agent of the corporation and he was identified in Yokohama's Rule 26 Initial Disclosures, served on April 2, 2007, and on Yokohama's Amended Initial Disclosures, served on December 7, 2007.  Since Mr. MacMaster was never noticed for deposition during the period set by this Court for fact discovery, Yokohama had no obligation to produce Mr. MacMaster for deposition *after* discovery cut-off.  Stamford waived its right to take the deposition of Mr. MacMaster and Yokohama should not be compelled now to produced the witness for deposition.

<u>Japanese Inventors</u>: The five inventors of the patent-in-suit are subordinate employees of YRC who are citizens of Japan and reside in Japan.  As a result of treaties, as foreign non-party witnesses, their depositions *must* be taken under the procedures set forth in Fed. R. Civ. P. 28(b).  On October 4, 2007, Yokohama indicated to Stamford that it would be willing produce the five inventors for deposition in Japan; Stamford never responded as to whether it would take the depositions in Japan.  Instead, Stamford waited until November 15, 2007 to notice all five depositions for Los Angeles, California, and further failed to subpoena these non-party witnesses for deposition.  The notice had no legal effect on Japanese citizens and no witnesses were produced.   That response was completely proper.

1                THIS PAGE LEFT INTENTIONALLY BLANK

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION - MTN TO COMPEL DEPOS
CASE NO. SACV 07-0010 CJC (MLGX)

LACA_1188274.3

## TOPIC #1:  THE FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) DEPOSITION OF YOKOHAMA RUBBER CO., LTD.

### Stamford's Position

**Yokohama Rubber Should Be Ordered To Produce A Corporate Representative For Deposition In Response To Each And Every Category Set Forth In Stamford's Federal Rule Of Civil Procedure 30(b)(6) Notice**

I.     **Stamford Timely Served Yokohama Rubber With A Proper Notice**

On November 15, 2007, Stamford served Yokohama Rubber (by hand delivery) with a Notice of Deposition pursuant to Fed.R.Civ.P. 30(b)(6).  The Notice directed Yokohama Rubber to produce one or more witnesses to testify on topics of critical importance to this action.  These topics included: (1) the conception and reduction to practice of the invention claimed in the '014 patent; (2) the prosecution of the application that lead to the '014 patent; (3) "prior art" known to the named inventors of the '014 patent, Yokohama, and/or their attorneys; (4) marketing, sales, and profits associated with Yokohama's alleged commercial embodiment, the S.drive tire; and (5) the factual basis for the claims set forth in Yokohama's Complaint.  Stamford provided more than adequate notice, setting the deposition for December 14, 2007.  (Kertell Decl., Ex. 1).

II.    **Yokohama Rubber Responded With Meritless, Boilerplate Objections**

Yokohama Rubber failed to respond to Stamford's notice for two weeks.  Finally, at 4:20 p.m. on November 27, 2007, Yokohama Rubber served meritless, "boilerplate" objections.[2]  These boilerplate objections asserted, without any further explanation, that Yokohama Rubber would not produce a witnesses in response to *any* of Stamford's enumerated deposition categories because (according to Yokohama) virtually every category set forth by Stamford was "overly broad,

---

[2] Although Yokohama Rubber's objections were dated November 26, 2007, they were not served until 4:30 p.m. on November 27, 2007.  (Kertell Decl., Ex. 2).

8

1   unduly burdensome, and inclusive of irrelevant subject matter" and/or "fail[ed] to

2   describe with reasonable particularity the matters on which examination is

3   requested." (Kertell Decl., Ex. 2). In so doing, counsel for Yokohama Rubber

4   blatantly disregarded this Court's express warning, made during the November 6,

5   2007 hearing on Stamford's prior motion to compel, that parties making "boilerplate

6   objections for which there is no genuine legal basis" would not be tolerated and

7   would be "met with sanctions to counsel personally." (Kertell Decl., Ex. 3, p. 3:7-

8   12). Indeed, in response to certain deposition categories, Yokohama refused to

9   produce a witness without citing a single specific objection.[3] (Kertell Decl., Ex. 2).

10  **III.   Yokohama Rubber Refused To Discuss Its Objections With Stamford**

11          Stamford, at 9:00 a.m. on November 28, 2007 (*i.e.*, the very next morning),

12  immediately called counsel for Yokohama Rubber and requested clarification as to

13  whether Yokohama Rubber was actually refusing to produce a witness without first

14  moving for a protective order. Counsel for Yokohama Rubber refused to even

15  discuss the matter. Instead, she tersely stated to "put it in a letter" and abruptly

16  hung-up the phone. Stamford, as requested by Yokohama Rubber, put its concerns

17  in a letter. (Kertell Decl., Ex. 5, p. 1). Yokohama Rubber never responded.

18          On December 3, 2007, Stamford again asked Yokohama Rubber if it was

19  actually refusing to produce a witness in response to Stamford's deposition notice.

20  Stamford even offered to move the deposition to a mutually convenient date if the

21  date originally noticed (December 14, 2007) was inconvenient. (Kertell Decl., Ex.

22  6). Again, Yokohama Rubber never responded.

23  ───────────────

24  [3] For example, Yokohama Rubber refused to produce a witness in response to
    Stamford deposition Category No. 7 (seeking information concerning the ownership,

25  assignment, and licensing of the '014 patent, including the license specifically
    referenced in Yokohama's March 26, 2007 First Amended Complaint). Yokohama

26  Rubber's only objection was a generic reference to the attorney-client privilege.
    (Kertell Decl., Ex. 2, p. 6). However, the attorney-client privilege certainly does not

27  extend to the terms of a license agreement between Yokohama Rubber and
    Yokohama Tire, especially when the alleged license agreement is the sole basis

28  supporting Yokohama Tire's standing to bring suit under the '014 patent. (Kertell
    Decl., Ex. 4, p. 2, ¶10).

On December 4, 2007, Stamford (for yet a third time) asked Yokohama Rubber if it was actually refusing to produce a witness in response to Stamford's deposition notice (on December 14, 2007, or any other mutually convenient date) without first moving for a protective order. Stamford also left voice mail messages for both of Yokohama Rubber's counsel. Finally, that afternoon, counsel for Yokohama Rubber responded with a terse E-mail stating that Yokohama Rubber would not produce a witness – on December 14, 2007 or any other date. No further explanation was provided. (Kertell Decl., Ex. 7).

**IV.   Yokohama Rubber's Failure To Appear For Deposition Without First Seeking A Protective Order Was Improper And Sanctionable**

Yokohama Rubber was served with a proper Notice of Deposition pursuant to Fed.R.Civ.P. 30(b)(6). It was therefore Yokohama Rubber's burden and obligation to seek a protective order if it truly believed good cause existed for its refusal to produce a witness in response to one or more of the deposition categories set forth therein. Yokohama Rubber's unilateral decision to ignore Stamford's notice without first seeking court intervention was unquestionably improper. *See*, Fed.R.Civ.P. 37(d) ("The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c)"). It also constituted sanctionable conduct, even in the absence of a court order. *Id. See also, Hilao v. Estate of Marcos*, 103 F.3d 762, 764-65 (9th Cir. 1996). Yokohama Rubber's violation of the governing law is even more incredible given that Stamford specifically warned Yokohama Rubber, on December 6, 2007, that its refusal to appear without first seeking a protective order was improper. (Kertell Decl., Ex. 8).

**V.   Yokohama Rubber's Reliance On *McCormick-Morgan* Is Misplaced**

In addition to its meritless "boilerplate" objections, Yokohama Rubber objected to several of Stamford's deposition categories (Nos. 17-18 & 29-37) as "improperly seeking YRC's legal contentions in the format of a Rule 30(b)(6) fact

1   deposition." (Kertell Decl., Ex. 2). Yokohama Rubber's only cited support for this

2   proposition was *McCormick-Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D.

3   275, 286 (N.D. Cal. 1991). However, Yokohama Rubber's reliance on *McCormick-*

4   *Morgan* is sadly misplaced.

5        First, Stamford's deposition notice seeks testimony concerning facts, not

6   legal contentions. For example, Stamford's deposition Category No. 17 seeks

7   information concerning "Marketing and advertising for the S.drive tire, including,

8   but not limited to, the ***factual basis*** for the allegations contained in Paragraph 13 of

9   Yokohama's March 26, 2007 First Amended Complaint."[4] (Kertell Decl., Ex. 1)

10  (emphasis added). As another example, Stamford's deposition Category No. 18

11  seeks information concerning "United States distributors and customers for the

12  S.drive tire, including, but not limited to, the ***factual basis*** for the statements made

13  in Paragraph 12 of Yokohama's March 26, 2007 First Amended Complaint."[5]

14  (Kertell Decl., Ex. 1) (emphasis added). Yokohama Rubber cannot prevent

15  Stamford from seeking facts related to its marketing, advertising, distribution, and

16  sale of the S.drive tire – especially when it claims this tire is the commercial

17  embodiment of the '014 patent.

18       Second, whatever protections *McCormick-Morgan* provided the corporate

19  deponent in that particular case, those protections came with a price. The

20  corporation, in lieu of having its representative asked certain questions: (1) was

21  ordered to answer a series of contention interrogatories setting forth the factual and

22  legal basis for all of its positions; and (2) was warned that it would be precluded at

23  trial from introducing any facts, or making any arguments, that were not contained

24

25  [4] Paragraph 13 of Yokohama's First Amended Complaint contained allegations that
    Yokohama Tire has extensively advertised, marketed, and promoted the S.drive tire
26  in the United States. (Kertell Decl., Ex. 4, p. 2).

27  [5] Paragraph 12 of Yokohama's First Amended Complaint contained allegations that
    Yokohama Tire introduced the S.drive tire in 2006, and that the S.drive tire is
    marketed and sold to discerning customers who are willing to pay a premium for a
28  tire with its tread pattern. (Kertell Decl., Ex. 4, p. 2).

1   within its responses to these contention interrogatories. *McCormick-Morgan*, 134

2   F.R.D. at 286-88. Yokohama Rubber has not agreed to either of these conditions.[6]

3        Third, and perhaps most importantly, the protections sought in *McCormick-*

4   *Morgan* were applied equally to both parties. That is, both parties had to live by the

5   same rules. *McCormick-Morgan*, 134 F.R.D. at 288. However, Yokohama Rubber

6   does not believe that it has to live by the same rules as Stamford. While Yokohama

7   Rubber objects to several of Stamford's deposition categories, Yokohama Rubber

8   ignores that it set forth very similar categories in its Fed.R.Civ.P. 30(b)(6) notice to

9   Stamford Tyres International Pte Ltd. (Kertell Decl., Ex. 9, pp. 5-7, ¶¶20-35 & 38-

10   40). Yokohama Rubber also ignores that it asked questions concerning the factual

11   basis for Stamford's affirmative defenses at the ensuing deposition of Stamford's

12   corporate representative. (Kertell Decl., Ex. 10). Yokohama Rubber even ignores

13   that it has used those exact questions in support of its motion for partial summary

14   judgment. (Kertell Decl., Ex. 11, p. 6:20-25). Simply put, Yokohama Rubber is

15   "talking out of both sides of its mouth."

16   **VI.   The Noticed Location Was Both Proper And Appropriate**

17        Yokohama Rubber also objected to the noticed location of the deposition (Los

18   Angeles) on the grounds that it is a Japanese corporation. This objection suffers

19   from numerous fatal flaws as well.

20        First and foremost, the deposition of a party may be noticed wherever the

21   deposing party designates. *See, e.g., Turner v. Prudential Insurance Company of*

22   *America*, 119 F.R.D. 381, 383 (M.D.N.C. 1988)(holding that a party may

23   unilaterally choose the place for deposing an opposing party); *Cadent Ltd. v. 3M*

24   *Unitek Corp.*, 232 F.R.D. 625, 628 (C.D. Cal. 2005). *See also*, Schwarzer, et al.,

25   *California Practice Guide: Federal Civil Procedure Before Trial*, §11:1456 (2007).

26

---

27   [6] *McCormick-Morgan* does not stand for the broad proposition that a corporate
deponent cannot be asked certain questions at a deposition. Instead, *McCormick-*

28   *Morgan* stands for the more limited proposition that a court has the inherent power
to order a party to seek the same discovery by an alternate method.

1    Thus, Stamford's selection of Los Angeles as the location for the deposition cannot

2    possibly render its notice improper.  It was Yokohama Rubber's obligation to seek a

3    protective order if it did not want to appear at the noticed location.

4        Second, even if Yokohama Rubber had sought a protective order, the Los

5    Angeles location was still appropriate.  Yokohama Rubber cited *Hyde & Drath v.*

6    *Baker*, 24 F.3d 1162 (9th Cir. 1994) and *Wisconsin Real Estate Investment Trust v.*

7    *Weinstein*, 530 F. Supp. 1249 (E.D. Wis. 1982) for the proposition that a deposition

8    notice is improper if a foreign corporation or individual is asked to appear in the

9    United States.  (Kertell Decl., Ex. 2, p. 1:18-22).  However, neither case supports

10   this statement.  As discussed above, no location is improper.  Moreover, even if

11   Yokohama Rubber had actually sought a protective order, ***both the Hyde and***

12   ***Wisconsin courts ordered the deponent to appear in the United States***.[7]  *Hyde*, 24

13   F.3d at 1166; *Wisconsin*, 530 F. Supp. at 1254.  The *Hyde* court even stated that a

14   corporate deponent that had "done business and filed suit" in the United States (like

15   Yokohama Rubber) "should… expect to have to appear there." *Hyde*, 24 F.3d at

16   1166.  *See also, Turner*, 119 F.R.D. at 383 (stating that a plaintiff will usually have

17   to appear for a deposition set in the forum district since the plaintiff chose the

18   forum).  Yokohama Rubber has done extensive business in the Los Angeles area,

19   Yokohama Rubber's counsel is located in Los Angeles, and Yokohama Rubber has

20   filed at least three different patent infringement cases (including this case) in this

21   judicial district within the past several months.  It is also important to note that

22   Yokohama Rubber is now refusing to waive restrictive Japanese procedural law so

23   that the deposition can be conducted pursuant to the Federal Rules.

24       Third, Yokohama Rubber is again "talking out of both sides of its mouth."

25   While Yokohama Rubber now conveniently asserts that it is improper to notice a

26   foreign corporation to appear in the United States for a Fed.R.Civ.P. 30(b)(6)

---

[7] It appears that counsel for Yokohama Rubber merely cited cases appearing in the *California Practice Guide* without ever reading them.

1    deposition, it took the opposite position earlier in this case.  Specifically, Yokohama

2    Rubber previously noticed the Fed.R.Civ.P. 30(b)(6) deposition of defendant

3    Stamford Tyres International Pte Ltd. (a Singapore company) to occur in Los

4    Angeles. (Kertell Decl., Ex. 9, p. 2:6-9).   Despite having no United States-based

5    employees, Stamford Tyres appeared in conformance with the notice.  (Kertell

6    Decl., Ex. 10).  Yokohama Rubber cannot have it both ways.

7          Fourth, Stamford expressly stated (in the March 27, 2007 Joint Report) that it

8    intended to notice the Fed.R.Civ.P. 30(b)(6) deposition of Yokohama Rubber for

9    Los Angeles.  (Kertell Decl., Ex. 12, pp. 3:27-4:2).  Not only did Yokohama Rubber

10   fail to make any objection, it signed the document.  Yokohama Rubber cannot "sit"

11   on an objection and remain silent for almost an entire year, and then be permitted to

12   raise the objection at the "last second" when it deems it tactically convenient.

13         Finally, Yokohama Rubber is not really objecting to the location of the

14   deposition due to a lack of convenience.  If that were the case, Yokohama Rubber

15   would have discussed the notice with Stamford and would have offered mutually

16   convenient dates for the deposition to occur in Japan.  None of that happened.

17   Instead, Yokohama delayed its response to Stamford's notice for as long as possible,

18   and even hung-up the phone when Stamford called to discuss the matter.  It is

19   therefore painfully transparent that Yokohama Rubber's real strategy has been to

20   delay discovery for as long as possible (through its refusal to timely produce

21   documents and to provide non-evasive interrogatory responses), and to then hide

22   behind restrictive Japanese law until the fact discovery period closed, with the intent

23   to avoid depositions altogether.  Such bad faith tactics should be sanctioned, not

24   rewarded.  A corporation that obtains a United States patent, that files suit in the

25   United States on that patent, that owns a major United States-based subsidiary, and

26   that intends to have its employees voluntarily appear at trial in the United States

27   should not be allowed to "game" the system and be effectively provided immunity

28   from discovery because it happens to be a Japanese corporation.

## VII.   Monetary And Evidentiary Sanctions Are Appropriate

Given its failure to appear for a properly noticed deposition without first seeking a protective order, Yokohama Rubber should be sanctioned in the amount of at least $30,000 for the costs and attorneys' fees incurred by Stamford in connection with the present motion (as well as the costs and attorneys' fees incurred by Stamford in attempting to secure the depositions discussed herein).  (Kertell Decl., ¶ 47).  Evidentiary sanctions should also be imposed.  Because a large number of Stamford's deposition topics related to the invalidity of the '014 patent, that patent should be declared invalid.  At a minimum, Yokohama's currently pending motion for partial summary judgment of patent validity should be dismissed, with prejudice.  There must be a significant deterrent to future litigants who not only refuse to attend properly noticed depositions, but who simultaneously attempt to capitalize on this improper behavior by filing summary judgment motions claiming that the other side has no evidence.

15

## YOKOHAMA'S POSITION:

## THE 30(B)(6) DEPOSITION OF YOKOHAMA RUBBER COMPANY, LTD.

### I.    Stamford's Notice of Deposition Was Improper

Stamford noticed the 30(b)(6) deposition of Yokohama Rubber Company, Ltd. (YRC), a Japanese corporation, to take place in Los Angeles, California, rather than at YRC's principal place of business.   Declaration of Charles A. Kertell in Support of Stamford's Motion to Compel Depositions ("Kertell Dec."), Ex. 1.  The deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business. *See Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 628 (C.D. Cal. 2005), citing *Wright, Miller & Marcus Federal Practice and Procedure*: Civil 2d § 2112 at 84-85 (1994 rev.).

### II.    Stamford Has Made the Same "Boilerplate" Objection In Response to the Notice for Its Own 30(b)(6) Deposition

When Yokohama noticed the deposition of Stamford's 30(b)(6) witness for Los Angeles, California in early October, Stamford responded that it would only make its witness available for deposition in Singapore, at the company's principal place of business, obviously hoping that Yokohama would not want to spend the money to go to Singapore.  Kertell Dec., Ex. 9, Chen Dec., Ex. 44.  Recognizing the importance of obtaining the 30(b)(6) deposition testimony, Yokohama agreed to take the deposition in Singapore, without delay, and without seeking this Court's intervention.  Chen Dec., ¶ 2.  After travel reservations had been made, Stamford decided it would produced the witness locally.  Chen Dec., ¶ 2.  Despite its own objections to a deposition at a place other than a corporation's principal place of business, Stamford now demands that YRC come to Los Angeles.  Even worse, Stamford purposely delayed until November 15, 2007, just prior to discovery cut-off, to notice the deposition of YRC in Los Angeles.  That deposition notice was the first mention of Stamford's intention of taking the deposition of YRC in Los Angeles.

More fundamentally, counsel in patent cases involving Japanese patents and inventors know that Japanese depositions may only be taken at U.S. Consulates in Japan and that the

JOINT STIPULATION - MTN TO COMPEL DEPOS
CASE NO. SACV 07-0010 CJC (MLGX)

LACA_1188274.3

1  rooms at the Consulate must be reserved six months in advance.   Stamford's counsel litigates

2  patent litigation regularly and is aware of this.   The limited availability of Consulate rooms

3  and the need for advance booking means that any discovery involving Japanese corporations

4  or its employees must be started as soon as discovery opens and not left to the last minute.

5  Thus, it was a waste of time for Stamford to even notice Japanese depositions in November,

6  much less in the United States.

7  **III.   Yokohama Affirmatively Stated in its Objections that No Witness Would Be**

8  **Produced**

9       Despite being served with Yokohama's objections to Stamford's defective deposition

10  notice, which clearly indicated that no witness would be produced, Stamford complains of

11  Yokohama's unwillingness to clarify whether YRC was in fact refusing to produce a witness.

12  No clarification was needed.   Yokohama's objections were clear. Stamford's phone calls,

13  letters and e-mails requesting "clarification" were simply designed to harass Yokohama.

14  Further, Stamford has repeatedly misstated facts on the record regarding phone conversations

15  that have taken place between Ms. Chen and Mr. Kertell.   As such, all discovery

16  communications have been in writing.

17       Curiously enough, while Stamford was busy "clarifying" whether Yokohama was

18  refusing to produce a witness on December 14, 2007 as noticed, Stamford was never even

19  available to take a deposition on that day.   To appease Stamford's repeated requests for

20  "clarification", on December 7, 2007, Yokohama confirmed in writing, again, the position

21  already made clear by its objections that no witness would be produced for the 30(b)(6)

22  deposition of YRC on December 14, 2007. Kertell Dec., Ex. 7.

23       In that *same correspondence*, Yokohama informed Stamford of an unforeseen

24  scheduling conflict necessitating the 30(b)(6) deposition of YTC to be taken on December 14,

25  2007 instead. Kertell Dec., Ex. 7. On December 6, 2007, Stamford responded that it would be

26  amendable to rescheduling the deposition, *however only for a date after discovery cut-off*.

27  Kertell Dec., Ex. 15.   When Yokohama expressed its unwillingness to stipulate to the

28  deposition being taking after discovery cut-off, Stamford simply responded that it was

1  "currently not available" to conduct the deposition on December 14, 2007. Kertell Dec., Exs.

2  16, 17.

3  ## IV.   **Stamford Is Attempting to Hide Its Own Bad Faith Delay Tactic**

4  Stamford complains that Yokohama sat on an objection only to raise it at the "last

5  second" when deemed "tactically convenient." That argument is absurd. The objection was

6  timely and Stamford should have expected it any event given its own position. The 30(b)(6)

7  deposition of YRC was not noticed until November 15, 2007, and unlike the depositions of the

8  inventors of the '014 patent which Stamford inquired into in late September, Stamford never

9  expressed any intent to take the 30(b)(6) deposition of YRC until mid-November.

10  Stamford's intent in this regard is clear – to run the clock on discovery, feverishly

11  noticing depositions to take place on the last days of discovery cut-off, and then requesting

12  "mutually convenient dates" *after* discovery cut-off in order to distract and delay Yokohama

13  from its focus on expert discovery, dispositive motions and trial preparation in a highly

14  significant case and where Judge Carney has even noted the evidence showing an intentional

15  copying of Yokohama's design. *See* Chen Dec., Ex. 47, fn. 3.

16  ## V.   **Stamford is Not Entitled to an Award of Sanctions Absent A Proper Showing**

17  No competent showing of attorneys fees has been made. To seek monetary sanctions in

18  any amount, the moving party must set forth, in detail, the hours worked, tasks performed,

19  identity of the attorneys involved and their billing rates. The movant must also establish that

20  the rates claimed are reasonable and are comparable with prevailing rates in the community.

21  *Toth v. Trans World Airlines*, 862 F.2d 1381, 1386 (9th Cir. 1988). But for conclusory

22  statements in the Declaration of Charles A. Kertell and John J. Kim, Stamford has not

23  provided any of this information. Absent such evidence, no fees can be awarded or upheld

24  even if a monetary sanction is justified. *Id.* The detailed information is necessary to afford a

25  basis to challenge the fee demand, as a matter of due process. Given the failure to provide the

26  details of the hours worked, tasks performed, identity of attorneys, and billing rates,

27  Stamford's $30,000 claim for fees on this motion, and $10,000 claim for fees in connection

28  with the deposition of Tom Griffing is inherently unreasonable and reflects a desire to write

letters and motions rather than proceed promptly with discovery in a case.   In any event, the sanctions request should be denied outright, since Stamford's motion to compel depositions after discovery cut-off has been necessitated by its own delay and failure to follow the Federal Rules of Civil Procedure.

Further, Stamford's claim for $10,000 in attorneys' fees in connection with the deposition of Tom Griffing is completely unjustified.  Stamford could have avoided the cost of Mr. Griffing's deposition by voluntarily taking Mr. Griffing's deposition off calendar once Yokohama confirmed to Stamford in writing that Mr. Griffing had no information relevant to this lawsuit and that Yokohama would not be calling him as a witness at trial.   Instead, Stamford insisted on taking Mr. Griffing's deposition only to confirm that he, in fact, had no information relevant to this lawsuit.

LACA_1188274.3

## TOPIC #2:  THE FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) DEPOSITION OF YOKOHAMA TIRE CORP.

### Stamford's Position

**Yokohama Tire Should Be Ordered To Produce A Corporate Representative For Deposition In Response To Each And Every Category Set Forth In Stamford's Federal Rule Of Civil Procedure 30(b)(6) Notice**

### I.      Stamford Timely Served Yokohama Tire With A Proper Notice

On November 15, 2007, Stamford served Yokohama Tire (by hand delivery) with a Notice of Deposition pursuant to Fed.R.Civ.P. 30(b)(6).[8]  The notice directed Yokohama Tire to produce one or more witnesses to testify on the same topics of critical importance set forth in the notice to Yokohama Rubber.  Stamford again provided more than adequate notice, setting the deposition for December 13, 2007. (Kertell Decl., Ex. 13).

### II.     Yokohama Tire Responded With Meritless, Boilerplate Objections

Yokohama Tire, like Yokohama Rubber, failed to respond to Stamford's notice for two weeks (at 4:30 p.m. on the afternoon of November 27, 2007). Yokohama Tire also asserted virtually the same meritless, "boilerplate" objections.[9] (Kertell Decl., Ex. 14).  Thus, Yokohama Tire also blatantly ignored this Court's express warning that "boilerplate objections for which there is no genuine legal basis" would not be tolerated and would be "met with sanctions to counsel personally."  (Kertell Decl., Ex. 3).

---

[8] Stamford served Yokohama Tire with an amended notice, on November 20, 2007, to correct a single, obvious typographical error.

[9] The differences were as follows:  (1) Yokohama Tire responded to several of Stamford's deposition categories by stating that no employee had any relevant information; (2) Yokohama Tire did not object to the location of the deposition; and (3) Yokohama Tire, while objecting to over 30 of Stamford's deposition categories, agreed (at least initially) to produce Mr. James MacMaster in response to a limited number of the remaining categories.  (Kertell Decl., Ex. 14).

**III.   Yokohama Tire Refused To Discuss Its Objections With Stamford**

Yokohama Tire, like Yokohama Rubber, also intentionally avoided discussing its refusal to produce a corporate representative for deposition without first seeking a protective order. (Kertell Decl., Ex. 5).  Yokohama Tire also ignored Stamford's repeated inquiries for clarification.  (Kertell Decl., Ex. 6).  Only on November 4, 2007 did Yokohama Tire finally confirm that it was refusing to produce a witness on December 13, 2007 (or any other date) to testify in response to the vast majority of the deposition categories set forth in Stamford's notice.  (Kertell Decl., Ex. 7).

**IV.   Yokohama Tire's Failure To Appear For Deposition Without First Seeking A Protective Order Was Improper And Sanctionable**

Yokohama Tire was served with a proper Notice of Deposition pursuant to Fed.R.Civ.P. 30(b)(6).  It was therefore Yokohama Tire's burden and obligation to seek a protective order if it truly believed good cause existed for its refusal to produce a witness in response to deposition categories set forth in that notice.  Yokohama Rubber's unilateral decision to ignore Stamford's notice without first seeking court intervention was unquestionably improper.  *See*, Fed.R.Civ.P. 37(d).  It also constituted sanctionable conduct, even in the absence of a Court Order.  *See, e.g., Hilao*, 103 F.3d at 764-65.  Yokohama Tire's violation of the governing law is even more incredible given that Stamford specifically warned Yokohama Tire, on December 6, 2007, that its refusal to appear without first seeking a protective order was improper.  (Kertell Decl., Ex. 8).

**V.   Yokohama Tire's Reliance On *McCormick-Morgan* Is Misplaced**

Yokohama Tire, like Yokohama Rubber, objected to several of Stamford's deposition categories (Nos. 17-18 & 29-37) as "improperly seeking YTC's legal contentions in the format of a Rule 30(b)(6) fact deposition," citing *McCormick-Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D. 275, 286 (N.D. Cal. 1991). (Kertell Decl., Ex. 14).  As discussed above, any reliance on *McCormick-Morgan* is sadly misplaced.

**VI.   An Unverified, Professed Lack Of Knowledge Is Not A Valid Objection**

Yokohama Tire also objected to producing a witness in response to several of Stamford's deposition categories (Nos. 2-9, 12-14, 16, 20, & 25-26) by stating that "there is no YTC employee with knowledge of this information." (Kertell Decl., Ex. 14). This "objection" is without merit for at least two reasons.

First, a professed lack of knowledge is not really an objection. Even if Yokohama Tire's unverified lack of knowledge is true, Yokohama Tire is not relieved of its obligation to produce a witness in response to a valid Fed.R.Civ.P. 30(b)(6) deposition notice. Stamford still has the right to ask a Yokohama Tire corporate representative to confirm, under oath, that no employee of the corporation has any responsive knowledge. Stamford also has the right to question the corporate representative as to the scope and thoroughness of the search (if any) conducted by the corporation to determine that no employee had any responsive knowledge.

Second, many of Yokohama Tire's representations concerning a lack of knowledge are simply too incredible to believe. For example, in response to Stamford deposition Category No. 7, Yokohama Tire stated that no employee has any knowledge concerning the "licensing of the '014 patent." (Kertell Decl., Ex. 14, p. 6). Yet, in is Complaint, Yokohama Tire plead that it is "exclusively licensed to sell tires covered by the '014 patent in the United States." (Kertell Decl., Ex. 4, p. 2, ¶10). Stamford is certainly entitled to inquire whether Yokohama Tire lied its objections to the Fed.R.Civ.P. 30(b)(6) notice, or whether it lied in its Complaint. Similar concerns are raised by Yokohama Tire's objections to: (1) Stamford deposition Category 16 (where Yokohama Tire, who is supposedly exclusively licensed to sell the S.drive tire in the United States, incredibly claims that it has no knowledge concerning any printed publication showing all or part of that tire); (2) Stamford deposition Category No. 20 (where Yokohama Tire incredibly claims that it has no knowledge concerning the marking (if any) of the S.drive tire); and (3) Stamford deposition Category No. 26 (where Yokohama Tire incredibly claims that

1   it has no knowledge concerning its own patent marking policies).  (Kertell Decl., Ex.

2   14).

3   **VII.   Yokohama Tire's "Game Playing" With Respect To The Date Of The**

4   **Deposition Further Exemplifies Its Bad Faith Approach To Discovery**

5   While Yokohama Tire refused to produce a witness (on any date) in response

6   to the vast majority of Stamford's deposition categories, it did (at least initially)

7   agree to produce Mr. James MacMaster in response to a limited handful of topics.

8   (Kertell Decl., Ex. 14).  However, on December 4, 2007, Yokohama suddenly

9   announced that it would no longer be producing Mr. MacMaster.  Instead, Mr. Mark

10  Chung would testify on behalf of Yokohama.  Yokohama also stated that Mr. Chung

11  was not available on the date originally noticed for the deposition (December 13,

12  2007).  Yokohama proposed that the deposition instead take place on December 14,

13  2007.  (Kertell Decl., Ex.  7).

14  Stamford responded that it could not take Yokohama Tire's deposition on

15  December 14, 2007.[10]  However, wanting to accommodate Yokohama Tire as

16  much as possible, Stamford requested that Yokohama Tire suggest other potential

17  dates.  (Kertell Decl., Ex. 15).  Yokohama Tire refused.  Incredibly, Yokohama

18  Tire took the position that, not only did it not have any obligation to appear on the

19  date noticed (December 13th), it was not obligated to appear (at all) if Stamford

20  would not agree to December 14th. (Kertell Decl., Exs. 16-19).  Yokohama Tire

21  once again ignores that it bore the burden and obligation to seek a protective order

22  if it truly could not appear on the date noticed (and no mutually convenient date

23  could be agreed upon).[11]

24  [10] Yokohama Tire argued that Stamford could have taken its deposition on
    December 14th because that was the date originally noticed for the deposition of

25  Yokohama Rubber.  However, as explained to counsel for Yokohama Tire, counsel
    for Stamford had to seek treatment for a medical condition on December 14th (after

26  Yokohama Rubber confirmed that it would not appear for a deposition on that date).
    Counsel for Stamford will provide (*in camera*) any documentary support for this

27  medical condition the Court deems necessary.

28  [11] Stamford again raised this topic with counsel for Yokohama Tire during the Local
    Rule 37-1 pre-filing conference on December 20, 2007.  Counsel for Yokohama Tire

LAI-2926750v2                                              23

## VIII. Monetary And Evidentiary Sanctions Are Appropriate

Given its failure to appear for a properly noticed deposition without first seeking a protective order, Yokohama Tire should be sanctioned in the amount of at least $30,000 for the costs and attorneys' fees incurred by Stamford in connection with the present motion (as well as the costs and attorneys' fees incurred by Stamford in attempting to secure the depositions discussed herein). (Kertell Decl., ¶ 47). Evidentiary sanctions should also be imposed. Because a large number of Stamford's deposition topics related to the invalidity of the '014 patent, that patent should be declared invalid. At a minimum, Yokohama's currently pending motion for partial summary judgment of patent validity should be dismissed, with prejudice.

---

(continued...)

indicated that he would "consider" producing a witness on a limited number of categories, but that he had to "think about it," and would "let Stamford know his decision." (Kertell Decl., ¶ 46). Counsel for Yokohama Tire has still not informed Stamford of his decision. In any event, Yokohama Tire must produce a witness in response to *each and every one* of Stamford's deposition categories.

## YOKOHAMA'S POSITION:

## THE 30(B)(6) DEPOSITION OF YOKOHAMA TIRE CORPORATION

### I.  The Deposition of YTC Was Cancelled By Stamford

Stamford never met and conferred with Yokohama regarding dates for the 30(b)(6) deposition of YRC.  Chen Dec., ¶ 5.  Instead, on November 15, 2007, Stamford noticed the 30(b)(6) deposition for YTC for December 13, 2007, three business days prior to the fact discovery cut-off.  Kertell Dec., Ex. 14.  Yokohama accommodated Stamford's need to take the 30(b)(6) deposition of YTC prior to discovery cut-off by making a witness available.  Kertell Dec., Ex. 7.  However, given the busy holiday season, only an alternate witness was available on December 14, 2007.  Kertell Dec., Ex. 7.  As discussed *supra* in *Yokohama's Position: The 30(b)(6) Deposition of YRC, Section III*, when Yokohama requested the date of YTC's deposition to be changed to the date noticed for the deposition of YRC, Stamford indicated that it was suddenly unavailable to take the deposition.[3]  Kertell Dec., Exs. 7, 15-17.

### II.  Yokohama Had No Obligation To Stipulate Any Depositions After The Discovery Cut-Off

Judge Carney set the schedule in this case.  Kertell Dec., Ex. 43.  Yokohama has followed it, and completed its discovery in a timely manner.  Stamford has not even come close.  Yokohama, in refusing to allow depositions to take place after discovery cut-off, is not only following this Court's Case Scheduling Order, but ensuring that this case is litigated in a fair and timely manner.  *See* Kertell Dec., Ex. 45.  Allowing Stamford to take depositions after discovery cut-off would greatly prejudice Yokohama during a critical time set aside for expert discovery, dispositive motions and trial preparation.  Yokohama was well within its right to refuse to stipulate to such a prejudicial alteration in scheduling.

---

[3] Yokohama was not made aware of Mr. Kertell's purported "medical condition" until December 20, 2007, after discovery cut-off, when the parties met and conferred on this motion.  Ironically at the meet and confer on this motion, the "medical condition" was conveyed to Yokohama as a mere doctor's appointment.

## TOPIC #3:  THE DEPOSITION OF MARK CHUNG

### Stamford's Position

### Yokohama Should Be Ordered To Produce Mark Chung For Deposition

**I.    Yokohama Failed To Identify Mark Chung In Its Initial Disclosures**

On April 2, 2007, Yokohama served its Fed.R.Civ.P. 26(a)(1) Initial Disclosures.  These disclosures identified at least five different Yokohama Tire employees who (according to Yokohama) had specific, relevant knowledge that Yokohama might use to support its claims.  Mark Chung, Yokohama Tire's Director for Strategic Marketing, was not identified.  (Kertell Decl., Ex. 20).

**II.   Yokohama Amended Its Initial Disclosures To Identify Mark Chung**
**With Less Than Ten Full Days Remaining In The Fact Discovery Period**

Yokohama's Initial Disclosures remained unchanged for the next eight months.  Suddenly, on December 7, 2007 (with less than 10 full days remaining in the fact discovery period), Yokohama amended its Initial Disclosures.[13]  Yokohama now identified Mr. Chung (for the very first time) as a person who had information concerning the "marketing and sales of [the] S.drive tire in the United States" that Yokohama might use to support its claims.  (Kertell Decl., Ex. 21, p. 1).  Yokohama provided absolutely no explanation why Mr. Chung, a high-ranking Yokohama Tire employee, was not identified earlier.  Moreover, because Yokohama delayed identifying Mr. Chung until there were less than 10 full days remaining in the fact discovery period, Yokohama was precluded from noticing Mr. Chung's deposition with the requisite 10 days notice.[14]

---

[13] Yokohama, however, only amended the witness section of its Initial Disclosures. It still refused to provide any information concerning its alleged damages, falsely claiming that it could not do so at this "early stage" of discovery.  (Kertell Decl., Ex. 21).

[14] Even were Stamford physically able to notice and/or subpoena Mr. Chung with less than 10 days notice, and even were the Court to (incorrectly) assume that Yokohama would have waived its objections, it would have been unfairly prejudicial

III.    **Yokohama Refused To Produce Mr. Chung Despite The Late Disclosure**

Despite its failure to disclose Mr. Chung in a timely fashion, Yokohama still inexplicably refuses to produce Mr. Chung for a deposition (Mr. Chung is clearly a "managing agent").  Yokohama has also stated that it will move to quash any subpoena served on Mr. Chung as beyond the fact discovery period.  (Kertell Decl., ¶ 46).  Yokohama should not be permitted to avoid Mr. Chung's deposition when it failed to disclose him in a timely fashion.  Otherwise, a very disturbing precedent would be set.  Every litigant in every case would attempt to avoid depositions by intentionally delaying amendments to their Initial Disclosures until late in the afternoon exactly 10 days prior to the close of discovery.

---

(continued...)

to require Stamford to take Mr. Chung's deposition with virtually no time to prepare. This is especially true in light of Yokohama's failure to provide any explanation for its late disclosure of its own employee.

Moreover, the timing of Yokohama's disclosure was certainly not coincidental. Yokohama intentionally waited to serve amended disclosures until the exact moment a valid deposition notice could no longer be served with the requisite 10 days notice. Such procedural "gamesmanship" has been the hallmark of Yokohama's approach to discovery throughout this case. (Kertell Decl., Ex. 22).

# YOKOHAMA'S POSITION:

## THE DEPOSITION OF MARK CHUNG

### I.   A Deposition Must First Be Noticed Before It Can Be Compelled

Under the Federal Rules of Civil Procedure, a deposition cannot be taken without first giving written notice. Fed. R. Civ. P. 30(b)(1). Indeed, Stamford concedes that the deposition of Mark Chung was never properly noticed. *See* Joint Stip., 26:17-20. Further, while service of a subpoena at least 10 days before the deposition is customary, it is not mandatory. *San Francisco Bay Area Rapid Transit Dist. v. Spencer*, 2006 U.S. Dist. LEXIS 8167, *13 (N.D. Cal. 2006); *see also* Fed. R. Civ. P. 30(b)(1) (requiring only "reasonable written notice"). Thus, Stamford's excuse that it was "precluded" from noticing Mr. Chung's deposition with the "requisite 10 days notice" because of Mr. Chung's late designation is entirely meritless. Indeed, when Stamford noticed Tom Griffing's deposition in November, having subsequently amended its initial disclosures to include Mark Chung, Yokohama voluntarily offered to produce Mr. Chung as YTC's 30(b)(6) deposition. Kertell Dec., Ex. 7. Stamford responded with their purported "unavailability." Instead, Stamford chose to pursue Tom Griffing's deposition despite repeated representations by Yokohama's counsel that Mr. Griffing did not possess any relevant information and that he would not testify at trial. Kertell Dec., Exs. 25, 19.

### II.   The Disclosure of Mark Chung Was a Good Faith Effort to Designate an Available Witness

In order to accommodate Stamford's ability to take the 30(b)(6) deposition of YTC noticed for just prior to discovery cut-off, Yokohama designated Mark Chung as the witness to testify on behalf of the Corporation, since Jim MacMaster would not be available on the date noticed. Accordingly, Yokohama amended its Initial Disclosure to identify Mr. Chung, since he would be testifying on behalf of YTC.[4] This good faith effort was in no way meant to

---

[4] Mr. Chung is the Director of Strategic Marketing. While his title indicates that he is a "director", Mr. Chung is a subordinate employee of Yokohama Tire Corporation and is not a managing agent of the corporation. As a non-party to this lawsuit, Mr. Chung is required

1  prejudice Stamford in being put on notice of a key witness.

2      As discussed *supra* in *Yokohama's Position: The 30(b)(6) Deposition of YRC, Section*

3  *III*,  Mr. Chung was made available for deposition prior to the discovery cut-off on December

4  14, 2007, but Stamford declined to take his deposition.  Stamford waived its right to take the

5  deposition of Mr. Chung and therefore Yokohama should not be compelled to produce Mr.

6  Chung for deposition.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  under the Federal Rules of Civil Procedure to be subpoenaed for deposition.

## TOPIC #4:  THE DEPOSITION OF JAMES MACMASTER

### Stamford's Position

### Yokohama Tire Should Be Ordered To Produce James MacMaster For Deposition

### I.    Yokohama Tire Identified Five Employees In Its Initial Disclosures

Yokohama's April 2, 2007 Initial Disclosures identified five Yokohama Tire employees as having information that Yokohama might use to support its claims or defenses.  These individuals were: (1) Tom Griffing; (2) Dan King; (3) Fred Koplin; (4) Lynn Sweeney; and (5) James MacMaster.  Mr. Griffing was identified as having the most relevant knowledge, namely: the "design, research, development and ornamentation of [the] S.drive tire."  Mr. King was identified as having knowledge concerning the "marketing/advertising strategy for [the] S.drive tire in the United States."  Mr. Koplin, Ms. Sweeney, and Mr. MacMaster were all identified as having the same general knowledge, namely: the "marking and sales of [the] S.drive tire in the United States."  (Kertell Decl., Ex. 20, p. 1).

### II.   Yokohama Lied When It Identified Mr. Griffing

Given the Fed.R.Civ.P. 30(a)(2)(A) limit of 10 depositions per side, Stamford was unable to depose all five Yokohama Tire employees identified in the Initial Disclosures.[16]  Thus, Stamford was forced to choose Mr. Griffing -- the Yokohama Tire employee who was described (by Yokohama) as having the most relevant information (*i.e.*, the design of the S.drive tire).  Immediately after Stamford served its notice, Yokohama did everything within its power to avoid Mr. Griffing's deposition (including its filing of a motion to quash that contained numerous factual misrepresentations).  (Kertell Decl., Ex. 23).  Yokohama's strong motivation for avoiding Mr. Griffing's deposition would later become apparent.

---

[16] Stamford also needed to depose: (1) Yokohama Rubber; (2) Yokohama Tire; (3) the five named inventors of the '014 patent; (4) the attorneys who prosecuted the '014 patent; and (5) any late disclosed witnesses (like Mr. Chung).

1    At his deposition, Mr. Griffing testified that Yokohama's Initial Disclosures
2    were a complete sham.  In particular, Mr. Griffing testified that he had absolutely no
3    knowledge of the S.drive tire and did not have any idea why he was identified in
4    Yokohama's Initial Disclosures.  Mr. Griffing also testified that nobody had ever
5    asked him about the S.drive tire or Yokohama's Initial Disclosures.  Mr. Griffing
6    even testified that Yokohama had lied about his job title.  (Kertell Decl., Ex. 24).

7    **III.   Yokohama Then Deleted Mr. Griffing, Mr. Koplin, Mr. King, and Ms.**
8    **Sweeney From Its Initial Disclosures**

9    After Stamford successfully subpoenaed Mr. Griffing, Yokohama apparently
10   became nervous that Stamford would expose the inaccurate statements its Initial
11   Disclosures.  Thus, despite having designated Mr. King, Mr. Koplin, and Ms.
12   Sweeney as persons with specific information that Yokohama might use to support
13   its claims, and despite having maintained these designations for well over eight
14   months, Yokohama deleted these three Yokohama Tire employees (along with Mr.
15   Griffing) from its Initial Disclosures on December 7, 2007.  (Kertell Decl., Ex. 21).

16   **IV.   Yokohama "Hid" Mr. MacMaster Via A Witness "Shell Game"**

17   Yokohama's "last-minute" deletion of Mr. Griffing, Mr. King, Mr. Koplin,
18   and Ms. Sweeney made it painfully obvious that Yokohama had falsely designated
19   four Yokohama Tire employees in its Initial Disclosures in an attempt to "hide" the
20   fifth employee (Mr. MacMaster) from deposition.  Allowing Yokohama to avoid
21   Mr. MacMaster's deposition via a witness "shell game," by falsely designating other
22   employees as having the exact same (or more relevant) information, would again set
23   a very disturbing precedent.[17]  Indeed, Yokohama's true motivation was confirmed
24   when it refused to produce Mr. MacMaster for deposition, even after Stamford
25   offered to withdraw its subpoena to Mr. Griffing.  (Kertell Decl., Ex. 25).

26   [17] Even were Stamford able to notice and/or subpoena Mr. MacMaster with less than
     10 days notice, and even were Stamford somehow able to avoid the limit of 10
27   depositions per side, it would have been highly prejudicial to require Stamford to
     engage in motion practice and take a deposition on such short notice.
28

**V.     Yokohama Previously Represented That Mr. MacMaster Would Appear**

Yokohama also engaged in a "bait and switch" technique to avoid Mr. MacMaster's deposition.  On November 27, 2008, Yokohama Tire informed Stamford that Mr. MacMaster would appear as its corporate representative in response to a limited number of categories set forth in Stamford's Fed.R.Civ.P. 30(b)(6) deposition notice.  (Kertell Decl., Ex. 14).  Because a Fed.R.Civ.P. 30(b)(6) witness can still be asked questions beyond the scope of the designated deposition topics (albeit without binding the corporation), Yokohama provided Stamford with yet another reason to notice Mr. Griffing (instead of Mr. MacMaster).  Only after Mr. Griffing had already been noticed and Stamford had already expended one of its last remaining deposition notices, did Yokohama Tire retract its representation that Mr. MacMaster would appear as its corporate designee.  (Kertell Decl., Ex. 7).  Thus, allowing Yokohama to avoid Mr. MacMaster's deposition would set yet a third disturbing precedent, encouraging litigants to falsely identify their Fed.R.Civ.P. 30(b)(6) corporate designees.

**VI.    Monetary Sanctions Are Appropriate**

Again, monetary sanctions should be imposed, in the amount of at least $30,000, to reimburse Stamford for the costs and attorneys' fees associated with the present motion.  (Kertell Decl., ¶ 47).  Further, because Yokohama lied in its Initial Disclosures, Yokohama should be ordered to reimburse Stamford for the costs and attorneys' fees associated with Mr. Griffing's deposition, in the amount of at least $10,000.  (Kertell Decl., ¶ 48).

## YOKOHAMA'S POSITION:

## THE DEPOSITION OF JAMES MACMASTER

**I.     MacMaster Was Never Noticed for Deposition**

Like Mr. Chung, Mr. MacMaster was never noticed for deposition despite every opportunity for Stamford to do so prior to the discovery cut-off of December 17, 2007. Mr. MacMaster was identified as the very *first* witness in its Rule 26 Initial Disclosures served on April 2, 2007. Kertell Dec., Ex. 20. Further, of the five individuals identified as witnesses, Mr. MacMaster, as Executive Vice President, is the individual with the highest corporate title. *See Id.* Finally, Mr. MacMaster has been the corporate representative who has signed verifications for each of Yokohama's responses to Interrogatories. Stamford never noticed Mr. MacMaster's deposition during discovery and it cannot now compel his deposition. Chen Dec., Ex. 45.

Further, given the number of depositions permitted under the Federal Rules, Stamford could have easily noticed the deposition of each and every single person listed in Yokohama's Rule 26 Initial Disclosure, the 30(b)(6) deposition of YTC, the 30(b)(6) deposition of YRC and still have 8 depositions left. *See* Fed. R. Civ. P. 30(a)(2)(A)(i). Stamford's argument that Yokohama "'hid' Mr. MacMaster via a 'shell game'" is simply a falsehood intended to distract the court from the fact that Stamford cannot compel a deposition that was never noticed.

In addition, Mr. MacMaster was initially designated to testify on behalf of YTC. Kertell Dec., Ex. 14. However, due to unforeseen scheduling conflicts in the busy holiday season, Yokohama had to make an alternative witness available to testify on behalf of the Corporation, as discussed *supra* in *Yokohama's Position: The Deposition of Mark Chung, Section II.* This type of scheduling conflict was completely foreseeable given the December cut-off date and Stamford's failure to consult Yokohama on mutually convenient dates.

**II.     Stamford's Discovery Tactics Are Abusive**

Yokohama erred in identifying Mr. Griffing as the individual likely to have discoverable information regarding the design, research, development and ornamentation of

JOINT STIPULATION - MTN TO COMPEL DEPOS
CASE NO. SACV 07-0010 CJC (MLGX)

the S.drive tire.[5]  Kertell Dec., Ex. 20.  Yokohama served amended disclosures on Stamford as soon as it discovered the error.  Kertell Dec., Ex. 21.  Further, Yokohama confirmed to Stamford in writing, as requested, that Mr. Griffing would not be called as a witness at trial.  Kertell Dec., Ex. 25.  In spite of the confirmation, Stamford insisted on taking Mr. Griffing's deposition anyway.

---

[5] The counsel for Yokohama who prepared this Disclosure is no longer with Foley & Lardner LLP.  Chen Dec., ¶ 7.

JOINT STIPULATION - MTN TO COMPEL DEPOS
CASE NO. SACV 07-0010 CJC (MLGX)

LACA_1188274.3